UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :      SEALED
                                    :      INDICTMENT
     - v. -                         :
                                    :      12 Cr.
STEPHEN COLANGELO, JR.,             :
                                    :      12 CRIM 838
          Defendant.                :
                                    :
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/15/12

### COUNT ONE

(Securities Fraud)

The Grand Jury charges:

#### Relevant Persons and Entities

1.    At all times relevant to this Indictment, STEPHEN
COLANGELO, JR., the defendant, was a resident of Rockland
County, New York.

2.    At various times relevant to this Indictment,
Brickell Fund, LLC (the "Brickell Fund") was a purported hedge
fund operated by STEPHEN COLANGELO, JR., the defendant, from an
office in Rockland County, New York.  COLANGELO held himself out
to be the "Managing Member" of the Brickell Fund.

#### The Investment Management Scheme

3.    Between at least in or about March 2009 and in or
about February 2011, STEPHEN COLANGELO, JR., the defendant, held
himself out as an investment manager and solicited funds from
private investors by promising to use the investors' funds to

JUDGE SWEET

trade securities for profit (hereinafter, COLANGELO'S "Investment Management Service").

4.    Between in or about March 2009 and in or about June 2009, STEPHEN COLANGELO, JR., the defendant, offered his Investment Management Service to potential investors through the vehicle of the Brickell Fund.  COLANGELO represented to potential investors that COLANGELO would manage the Brickell Fund and that the Brickell Fund would, at COLANGELO's direction, use investor funds to trade in securities for profit.

5.    At various other times, both before and after the existence of the Brickell Fund, STEPHEN COLANGELO, JR., the defendant, offered his Investment Management Service to potential investors either through the vehicles of other funds and corporations that COLANGELO established, similar to the Brickell Fund, or simply as a personal service to be performed by COLANGELO and operated from COLANGELO's personal brokerage account.

6.    In the course of soliciting investments in his Investment Management Service, STEPHEN COLANGELO, JR., the defendant, made numerous false and fraudulent statements and representations, including the following:

a.    COLANGELO told potential investors that COLANGELO's compensation for performing the Investment

Management Service would consist of a nominal management fee, if any, plus a percentage - typically between 30% and 50% - of any trading profits.  COLANGELO represented to potential investors that the purpose of this structure was to ensure that COLANGELO's compensation would be almost entirely dependent on his trading success.  For example, on or about March 16, 2009, COLANGELO sent an email to a potential investor in which COLANGELO said that he would earn his "living ONLY when you make money with the firm."  Likewise, on or about April 22, 2009, COLANGELO sent an email to a group of investors stating, "[M]y clients and their famil[ies] come first.  If I can not earn them money why should I."  These representations were false.  In fact, as described below, despite suffering consistent and overwhelming losses as a result of his operation of his Investment Management Service, COLANGELO consistently transferred to himself an enormous percentage of the investor money under his control in order to support his personal expenses and unrelated business ventures.

b.   In order to encourage potential investors to invest in his Investment Management Service, COLANGELO provided potential investors with supposed updates on his current trading activity, falsely claiming to have made profitable trades.  For example, on or about March 30, 2009, COLANGELO sent an email to

-3-

potential investors stating: "With the market being DOWN over
250 points today CTIC [Cell Therapeutics, Inc.] was some pick.
We purchased 300,000 shares at 30 cents (90,000 dollars) and
sold 300,000 shares at 45 cents (135,000 dollars) Up 50%.....!"
Similarly, on or about March 31, 2009, COLANGELO sent an email
to potential investors reporting on "Today[']s Trades/Brickell
Fund LLC" and stating: "[S]old 50,000 shares of YGE [Yingli
Green Energy] at 6.40. We purchased 50,000 shares at 5.75 so we
made a 65 point move....Another Great Day!!!!!"  These
transactions were made up by COLANGELO.  In fact, COLANGELO had
not engaged in any trading during the period of time when he
made these representations, much less the specific trading that
he reported to potential investors.

       c.   Offering documents and emails that COLANGELO
sent to potential investors described his investment strategy as
involving "long-term, value investing," executed by a "team of
investment professionals," using "multi-factor quantitative
models to rank more than 3,000 stocks on a daily basis" with the
goal of "maintain[ing] a broadly diversified portfolio that
limits idiosyncratic company-specific risks[.]"  In furtherance
of this purported strategy, COLANGELO claimed that he employed
"a number of investment restrictions and risk control parameters
. . ., including concentration limits for individual stock and

sector exposures." Again, these representations were false. COLANGELO had no such investment professionals, models, or restrictions. Contrary to his representations to potential investors about long-term investing and risk-management through diversification and concentration limits, COLANGELO knew that his trading strategy would be and was to engage in frenetic day-trading in a very small number of stocks, typically starting a day with no securities holdings, executing dozens of transactions in the chosen stocks throughout the day, and then liquidating all holdings by the end of the trading day (the "Colangelo Day-Trading Strategy").

d.    In seeking to obtain investments from later investors, COLANGELO deliberately and fraudulently withheld the material information that he had either lost or misappropriated nearly all of the money that had previously been invested in his Investment Management Service.

7.    Based on the foregoing fraudulent representations and promises, among others, STEPHEN COLANGELO, JR., the defendant, succeeded in obtaining more than $1.6 million from investors for investment in his Investment Management Service (collectively, the "Investment Management Service Victims") between in or about March 2009 and in or about February 2011. Moreover, also based on the foregoing fraudulent representations

-5-

and promises, COLANGELO persuaded one of these same Investment
Management Service Victims to make him a loan of approximately
$250,000, at least $150,000 of which was to be used for the
Brickell Fund's operations.

8.   Almost immediately upon his first receipt of
money from the Investment Management Service Victims, and
consistently thereafter, STEPHEN COLANGELO, JR., the defendant,
misappropriated large amounts of investor money for his own
personal benefit and to support his unrelated business ventures.
For example:

a.   On or about April 3, 2009, one of the first
Investment Management Service Victims ("V-1") sent COLANGELO an
investment of approximately $23,900.  Thereafter, between on or
about April 3, 2009 and on or about April 13, 2009, COLANGELO
spent all or nearly all of the investment on personal expenses,
including restaurant expenses and personal retail expenses,
while engaging in no securities trading whatsoever.

b.   On or about May 5, 2009, another Investment
Management Service Victim ("V-2") sent an investment of
approximately $350,000 to a bank account owned by the Brickell
Fund and controlled by COLANGELO.  On or about May 6, 2009,
COLANGELO transferred approximately $100,000 of this $350,000
investment into his personal bank account.  On or about May 11,

-6-

2009, COLANGELO transferred approximately $49,000 more of this
$350,000 investment into his personal bank account.  In total,
only approximately $200,000 of V-2's $350,000 investment was
ever transferred into the Brickell Fund's brokerage account for
trading purposes.

        c.    On or about May 21, 2009, a third
Investment Management Service Victim ("V-3") sent an investment
of approximately $100,000 to a bank account owned by the
Brickell Fund and controlled by COLANGELO.  That same day,
COLANGELO transferred approximately $25,000 of V-3's investment
into his personal bank account and the remaining $75,000 into
the Brickell Fund's brokerage account.  On or about May 26,
2009, COLANGELO transferred $26,000 back from the Brickell
Fund's brokerage account and, thereafter, transferred it to his
personal account.

        d.    On or about May 27, 2010, a fourth
Investment Management Service Victim ("V-4") sent an investment
of approximately $100,000 to a bank account controlled by
COLANGELO.  Thereafter, between approximately June 4, 2010 and
June 30, 2010, COLANGELO transferred approximately $55,000 of V-
4's investment into his personal bank account and into the bank
accounts of unrelated business ventures that COLANGELO
controlled.

e.    Between in or about November 2010 and in or about February 2011, a fifth Investment Management Service Victim ("V-5") sent a total investment of more than approximately $1 million to a bank account controlled by COLANGELO.  COLANGELO subsequently transferred approximately $500,000 of V-5's investment into his personal bank account and into the bank accounts of unrelated business ventures that COLANGELO controlled.

9.    Of the approximately $1.85 million that STEPHEN COLANGELO, JR., the defendant, fraudulently procured from the Investment Management Service Victims in investments and loans, COLANGELO misappropriated hundreds of thousands of dollars by transferring the money either to himself or to other unrelated business ventures that he controlled.  COLANGELO also lost approximately $900,000 by engaging in the Colangelo Day-Trading Strategy.

10.   STEPHEN COLANGELO, JR., the defendant, repeatedly lied to and misled the Investment Management Service Victims in order to cover up the consistent and overwhelming losses that their investments suffered through his operation of his Investment Management Service.  For example:

a.    On or about June 1, 2009, COLANGELO sent an email to several Investment Management Service Victims that

-8-

described the supposed trading activities of the Brickell Fund
by saying, "CTIC popped today. We [w]ere buying CTIC at 40
cents. Up 46% today at 2.10 a share."  This representation was
false.  The Brickell Fund did not have a position in CTIC and
had not engaged in the trades that COLANGELO reported.

     b.   On or about June 2, 2009, COLANGELO sent an
email to V-2 that described the supposed trading activities of
the Brickell Fund by saying, "[W]e also had a great day in the
markets. ctic was up sx percent[.]"  When V-2 responded that he
"[h]ope[d] [he] made some money today," COLANGELO responded,
"You did[.]  [E]very one in the brickell fund did[.]"  Again,
these representations were false.  The Brickell Fund did not
have a position in CTIC at the time.  Moreover, although the
Brickell Fund had, in fact, earned profits of approximately 12%
trading several other stocks during the most recent trading day,
COLANGELO omitted the material fact that the Brickell Fund's
total profit amounted to only approximately $860 because
COLANGELO had already by then lost or misappropriated several
hundred thousand dollars of the Brickell Fund's trading capital
and all that remained for trading purposes was $6,700.

     c.   In or about May 2010, COLANGELO falsely
reported to V-4 that COLANGELO's trading activity had earned V-4
a 50% return on his initial investment of $20,000 within two

weeks of the investment. In fact, COLANGELO had never transferred V-4's investment into any brokerage account, much less used it for trading. Moreover, the trading that COLANGELO engaged in during that period - with funds other than those from V-4 - produced negative results. As a result of COLANGELO's false and fraudulent representations of successful trading with V-4's money, V-4 invested another $100,000 in COLANGELO's Investment Management Service.

11. In furtherance of his scheme to defraud, STEPHEN COLANGELO, JR., the defendant, regularly communicated with the Investment Management Service Victims and others by means of interstate electronic mail messages.

<u>Statutory Allegations</u>

12. From in or about March 2009 through in or about February 2011, in the Southern District of New York and elsewhere, STEPHEN COLANGELO, JR., the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to

-10-

defraud; (b) making untrue statements of material facts and

omitting to state material facts necessary in order to make the

statements made, in the light of the circumstances under which

they were made, not misleading; and (c) engaging in acts,

practices and courses of business which operated and would

operate as a fraud and deceit upon other persons and entities in

connection with a scheme to solicit and misappropriate

investments in his Investment Management Service.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17,
Code of Federal Regulations, Section 240.10b-5; and Title 18,
United States Code, Section 2.)

## COUNT TWO

(Wire Fraud)

The Grand Jury further charges:

13.  The allegations contained in paragraphs 1 through

11 are repeated and realleged as though fully set forth herein.

14.  From in or about March 2009 through in or about

February 2011, in the Southern District of New York and

elsewhere, STEPHEN COLANGELO, JR., the defendant, willfully and

knowingly, having devised and intending to devise a scheme and

artifice to defraud and for obtaining money and property by

means of false and fraudulent pretenses, representations, and

promises, to wit, a scheme to solicit and misappropriate

investment funds, did transmit and cause to be transmitted by

-11-

means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, for the purpose of executing such scheme and artifice, to wit, electronic mail messages between COLANGELO and the Investment Management Service Victims.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE

(Securities Fraud)

The Grand Jury further charges:

15.   The allegations contained in paragraphs 1 and 2 are repeated and realleged as though fully set forth herein.

### The Business Ventures Scheme

16.   Between at least in or about August 2009 and in or about October 2011, STEPHEN COLANGELO, JR., the defendant, solicited investments in at least the following three companies (the "Business Ventures"), which he had founded:

a.   Hedge Community, which COLANGELO told investors would operate a web-based social networking platform for hedge fund managers and investors;

b.   Start A Hedge Fund, which COLANGELO told investors would provide an assortment of services to individuals and entities interested in starting hedge funds; and

c.   Under The Radar SEO, which COLANGELO told investors would provide services related to online marketing.

17.   In private placement memoranda that STEPHEN COLANGELO, JR., the defendant, caused to be prepared and circulated for the purpose of soliciting equity investments in the Business Ventures, COLANGELO made misrepresentations about how much of the investment money would be used for employee compensation, professional fees, and finders' fees, including those for himself.  As COLANGELO well knew - and as he fraudulently failed to tell potential investors - COLANGELO would and did misappropriate for himself investor funds that greatly exceeded anything to which he was entitled based on his representations to potential investors, and out of all proportion to the portion of the funds that he put towards the genuine operation of the business ventures.  For example:

a.   In the private placement memorandum for Hedge Community, COLANGELO represented that salaries paid to Colangelo and others would amount to approximately $8,750 per week.  This representation was false.  Between in or about August 2009 and in or about May 2010, COLANGELO (i) solicited and obtained approximately $700,000 from investors in Hedge Community, and (ii) transferred approximately $133,000 from the Brickell Fund to Hedge Community (without the knowledge of

-13-

investors in the Brickell Fund).  COLANGELO took more than
approximately $320,000 of that money for his own personal
benefit.

        b.  In the private placement memorandum for
Start A Hedge Fund, COLANGELO represented that of the
approximately $3 million that COLANGELO sought to raise,
salaries and professional fees would account for approximately
$400,000; in other words, approximately 13 percent.  This
representation was false.  Between in or about April 2010 and in
or about September 2010, COLANGELO solicited and obtained
approximately $350,000 from investors in Start A Hedge Fund.
COLANGELO took more than approximately $200,000 of that money
for his own personal benefit.

        c.  In the private placement memorandum for Under
The Radar, COLANGELO represented that of the approximately $1
million that COLANGELO sought to raise, professional fees would
account for approximately $100,000, and offering expenses and
finders' fees would account for approximately $100,000; in other
words, approximately 20 percent in total.  This representation
was false.  Between in or about June 2010 and in or about
October 2011, COLANGELO solicited and obtained approximately
$1.18 million from investors in Under The Radar.  COLANGELO took

-14-

more than approximately $600,000 of that money for his own
personal benefit.

18.   In furtherance of his scheme to defraud, STEPHEN
COLANGELO, JR., the defendant, regularly communicated with the
investors in the Business Ventures and others by means of
interstate electronic mail messages.

### Statutory Allegations

19.   From in or about August 2009 through in or about
October 2011, in the Southern District of New York and
elsewhere, STEPHEN COLANGELO, JR., the defendant, willfully and
knowingly, directly and indirectly, by use of the means and
instrumentalities of interstate commerce, and of the mails, and
of the facilities of national securities exchanges, in
connection with the purchase and sale of securities, did use and
employ manipulative and deceptive devices and contrivances, in
violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by (a) employing devices, schemes and artifices to
defraud; (b) making untrue statements of material facts and
omitting to state material facts necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading; and (c) engaging in acts,
practices and courses of business which operated and would
operate as a fraud and deceit upon other persons and entities in

-15-

connection with a scheme to solicit and misappropriate

investments in the Business Ventures.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17,
Code of Federal Regulations, Section 240.10b-5; and Title 18,
United States Code, Section 2.)

## COUNT FOUR

(Wire Fraud)

The Grand Jury further charges:

20.  The allegations contained in paragraphs 1 and 2,
and 16 through 18 are repeated and realleged as though fully set
forth herein.

21.  From in or about August 2009 through in or about
October 2011, in the Southern District of New York and
elsewhere, STEPHEN COLANGELO, JR., the defendant, willfully and
knowingly, having devised and intending to devise a scheme and
artifice to defraud and for obtaining money and property by
means of false and fraudulent pretenses, representations, and
promises, to wit, a scheme to solicit and misappropriate
investment funds, did transmit and cause to be transmitted by
means of wire communication in interstate and foreign commerce
writings, signs, signals, pictures and sounds, for the purpose
of executing such scheme and artifice, to wit, electronic mail
messages between COLANGELO and investors in the Business
Ventures.

-16-

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

22.   As a result of committing the offenses alleged in Counts One, Two, Three, and Four of this Indictment, STEPHEN COLANGELO, JR., the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

## SUBSTITUTE ASSET PROVISION

23.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

-17-

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981, Title 28, United States Code, Section 2461.)

_____          _____
FOREPERSON                                PREET BHARARA
                                          United States Attorney

11/15/12 - Filed Sealed Indictment.
dc        Arrest Warrant issued.

Judge Francis